The instructions which the judge, upon the trial of this action, gave to the jury, and also those which he refused to give when requested by the counsel for the defendant, involve an inquiry into the rights and duties of the company under the contract which is the basis of the plaintiff's claim.
The defendant is a carrier of passengers for hire by railroad. "It is bound to give all reasonable facilities for the reception and comfort of passengers, and to use all precautions, as far as human care and foresight will go, for their safety upon the road, and is answerable for the smallest negligence in itself or its servants." (2 Kent's Com., 601.) Transportation by railway is one of the highest efforts of science and art, and imposes upon those employed in it a degree of care, circumspection and diligence unknown to *Page 463 
other modes of conveyance. It implies also a degree of authority in the direction and management of the trains, in their progress over the road, and in regard to the time and manner in which passengers shall enter and depart from, and the conditions upon which they are to remain within the cars, little less than absolute. Such regulations as will enable a railroad corporation to execute its difficult and responsible duties, insure the comfort and safety of its passengers, and protect itself from wrong and imposition, it has an undoubted right to prescribe, provided such regulations are reasonable and just. It has a right to require that passengers shall preserve order; that they shall be seated, and not stand up in the passage way or upon the platforms; and that they shall abstain from any act which tends to impede or interrupt the conductors and managers in the transaction of their necessary business. A railroad company has also a right to prescribe how and at what places the passengers shall pay their fare or passage money, and what shall be the evidence to the conductor that such money has been paid and of the passenger's right to ride upon the train. It may also require passengers to accept tickets temporarily; to exhibit them from time to time upon the request and for the information of the conductors; and, finally, to redeliver such tickets, upon request, before leaving the cars. Some of these regulations are necessary to insure the safety of the passengers themselves, others to insure the payment of the regular fare and to protect the carrier from imposition. They may be enforced by such reasonable means as the company may have at its command; for, without some measure of power to give them effect, such regulations would be of little avail. (Commonwealth v. Power,
7 Metc., 596; Hall v. Power, 12 id., 482.)
By the rules and regulations of the New-York and Erie Railroad Company, every passenger is required to exhibit his ticket, if he has one, to the conductor. upon request, or, if he has no ticket, to pay his fare and accept one. And *Page 464 
upon refusal to comply with the regulation, it is made the duty of the conductor to remove such delinquent passenger from the cars. The regulation, it appears to me, is not unreasonable, for the company is responsible for its unjust application, or for enforcing it with undue severity. No well-disposed passenger will refuse to accept a ticket and exhibit it as often as the conductor may reasonably desire it; and it is quite usual to place the ticket in some conspicuous place about the person of the passenger, so as to supersede the necessity of repeated inquiries. If one passenger may at his pleasure contemn the regulations of the company and put the conductors at defiance, all may; and such a result would put it out of its power to protect itself from injury and to fulfill its duties to those who committed themselves to its charge. The regulation referred to assumes that an individual within the cars, who refuses, upon request, to exhibit to the conductor the customary evidence of his right to a seat, or to pay for and accept such evidence, is an intruder and a wrong-doer, and has no legal right to remain where he is. Such, I think, should be the legal, as it certainly is the natural presumption. It is therefore quite right that he should be requested to leave the cars when he manifestly has no right to remain. If he refuses, the conductor may then employ so much force as may be necessary to effect his removal, at the same time using no violence and doing no unnecessary injury. If, however, the passenger refuses to comply, and resists, and injury happens, it is an injury for which the company is not responsible, for it is a result attributable to his own wrongful conduct.
The counsel for the defendant requested the judge to charge the jury, "That when the plaintiff paid his fare and took his ticket from the ticket office at Hornellsville, for Scio, he agreed to conform to the rules and regulations of the company by showing his ticket to the conductor when requested so to do." The judge declined so to charge, and the defendant excepted. In this I think he *Page 465 
erred. It appears to me the proposition embodied in the request is too plain to admit of a doubt. The regulation was a necessary and a reasonable one, and unless railroad passengers are above all control they are bound to observe reasonable and proper regulations while within the cars, claiming the services and the care and foresight of the company. The refusal to instruct the jury as requested, coupled with what the judge said to them afterwards, left them to infer that if the conductor knew the fare had been paid, the plaintiff was justified in refusing to show the ticket. The judge then charged "that the ticket being the ordinary evidence of the payment of fare, a passenger is bound to exhibit his ticket when reasonably requested to do so; but if the conductor knew that the plaintiff had paid his fare he had no right to expel him from the cars, although he refused to exhibit his ticket." To this, also, the defendant excepted. This part of the charge imports that, if the conductor knew the plaintiff had paid his fare, the latter was under no obligation to show his ticket, and that the sole office of the ticket is as evidence that the fare has been paid. In this particular I also think the judge erred. It was no justification to the plaintiff though the conductor did know that the fare was paid. The ticket does not bear the name of the passenger to whom it is issued. It is usually inscribed with the day when and the office from whence it is issued and the place to which the passenger proposes to travel. But it is as good in the hands of a stranger as it is in the hands of the person who paid for and took it from the office, and the conductor has the right to see it, from time to time, that he may be assured it is not made the instrument of carrying two passengers in place of one. If the rule laid down by the court is correct, and the conductor has only a right to see the ticket when he has no knowledge that the fare has been paid, there is nothing to prevent a passenger, who has paid his fare with the knowledge of the conductor, from passing his ticket over to a stranger to be used as evidence *Page 466 
that he also has paid his fare and acquired a right to be carried in the cars. The ticket is the property of the railroad company, and is a part of the means by which it conducts its business. It is delivered to the passenger to be held by him, temporarily, for a special purpose, and who, to that extent, acquires a special property in it. When the journey is ended, or about to end, it is to be redelivered to the conductor. It serves a threefold purpose: it is evidence in the passenger's hands that he has paid his fare and has a right within the cars; it insures the payment of the passage money by all who take seats, and when it is redelivered to the company it becomes a voucher in its hands, against the office or agent who issued it, in the adjustment of its accounts. To say that the passenger is bound to exhibit the ticket when reasonably requested, but if the conductor knew the passenger of whom the request is made had paid his fare, he had no right to enforce his request, is a contradiction in terms which could do nothing less than mislead the jury from the true question before them.
If I am right in the opinion that the regulation for the exhibition of the passengers' tickets, is a necessary and reasonable regulation, and one which may be enforced by removing the refractory passenger from the cars, then the court also erred in the instructions given to the jury for estimating the damages. The counsel for the defendant "requested the justice to charge that the defendant was not liable for the injuries which the plaintiff may have sustained in consequence of the assault in question, by their agents and servants." The justice declined, and told the jury "that if in pursuance of the defendant's orders and instructions, the plaintiff was wrongfully ejected from the cars, and was wantonly treated by the conductor or agents of the defendant in so ejecting him, the defendant is liable for the injuries resulting to the plaintiff from such ejection." The jury were also told that they "might award damages in their discretion, as a compensation for the personal ill *Page 467 
treatment to which the plaintiff had been subjected in ejecting him from the cars." The defendant excepted to the refusal of the court to charge as requested, and also to the instruction given them in respect to the measure of damages. The object of the request was that the court should discriminate between those acts of the company's agents done in the execution of its directions, and those done in excess of its instructions, and without authority or approbation. This, I think, should have been done. The plaintiff may have been injured by the use of unnecessary force to effect what the company had a right to do. The conductor, and those who aided him, are not the company, They are its agents and servants, and whatever tortious acts they commit by its direction, it is responsible for and no other. This is upon the principle that what one does by another he does by himself. For injuries resulting from the carelessness of the servant in the performance of his master's business, the latter is liable. But for the wilful acts of the servant the master is not responsible, because such willful acts are a departure from the master's business. (Wright v. Wilcox, 19 Wend., 343,and the cases there referred to.) In removing a passenger from the cars who refuses to pay his fare or exhibit his ticket, the servants of the company are limited to the use of just so much force as may effect that object, and no more. They are not to resort to force at all, until it becomes absolutely necessary, by the refusal of the passenger to depart upon request; and when they do resort to it they are to use no more than becomes sufficient, and they are to do no unnecessary injury to the party. This is the extent of their authority, and if they exceed it, they, and not the company, are responsible for the consequences. The defendant had a right, I think, upon the trial, to have the attention of the jury directed to this distinction, for it is impossible to say, from an examination of the bill of exceptions, upon what ground so large an amount of damages was rendered. *Page 468 
There should be a new trial, with costs to abide the event.